[Cite as *Reed Elsevier, Inc. v. Feder*, 2015-Ohio-5013.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| REED ELSEVIER, INC. | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 26680 |
| | : | |
| v. | : | Trial Court Case No. 2014-CV-7004 |
| | : | |
| CRAIG FEDER | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of December, 2015.

. . . . . . . . . . .

MICHAEL W. SANDNER, Atty. Reg. No. 0064107, JESSICA A. BROCKMAN, Atty. Reg. No. 0092014, 2700 Kettering Tower, Dayton, Ohio 45423
    Attorneys for Plaintiff-Appellant

CRAIG FEDER, P.O. Box 78302, San Francisco, California 94107
    Defendant-Appellee-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Reed Elsevier, Inc., dba LEXISNEXIS ("LEXIS") appeals from a judgment granting a motion to quash service of summons for lack of personal jurisdiction, which had been filed by Defendant-Appellee, Craig Feder, dba Law Office of Craig Feder ("Feder"). LEXIS contends that the trial court erred by granting the motion to quash. For the reasons set forth below, we agree that the trial court erred in dismissing the complaint for lack of personal jurisdiction. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

**{¶ 2}** In December 2014, LEXIS filed a complaint against Feder, alleging that Feder had breached a contract between the parties for provision of online legal services, and had failed to pay $31,295.53 that was owed for the services. Reed attached two Exhibits to the complaint: Ex. A was a Subscription Agreement dated January 11, 2012, and Ex. B was a "Promotional Bridge Addendum," dated February 22, 2013.

**{¶ 3}** In March 2015, Feder filed a motion to quash the service of summons for lack of personal jurisdiction and to dismiss the Complaint pursuant to Civ.R. 12(B)(2) and (3). Feder alleged in the motion that he was a resident of California and had never been to Ohio. He admitted that the parties had entered into a subscription agreement on January 11, 2012, and that the agreement was subsequently modified. However, he also claimed that the parties had entered into an accord and satisfaction on April 7, 2014.

**{¶ 4}** Feder did not file an affidavit in support of the motion; instead, he submitted unauthenticated copies of a letter sent to LEXIS, and the front and back sides of a check

in the amount of $223.00 addressed to LEXIS.

{¶ 5} The trial court did not hold an evidentiary hearing, nor did it notify the parties that it was converting the motion into a summary judgment motion. On April 7, 2015, the trial court issued a decision and entry granting the motion to quash and dismissing LEXIS's claims without prejudice. LEXIS timely appealed from the judgment dismissing its claims.

## II. Did the Court Err in Granting the Motion to Quash?

{¶ 6} LEXIS's sole assignment of error states that:

The Trial Court Erred as a Matter of Law in Granting Craig Feder's Motion to Quash and Dismiss for Lack of Jurisdiction.

{¶ 7} Under this assignment of error, LEXIS contends that the trial court erred by considering matters outside the pleadings and by failing to notify LEXIS that it was converting a motion to dismiss into a motion for summary judgment.

{¶ 8} Feder's motion was brought pursuant to Civ.R. 12(B)(2) and (3), which pertain, respectively, to "lack of jurisdiction over the person" and "improper venue." "It is rudimentary that in order to render a valid personal judgment, a court must have personal jurisdiction over the defendant." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156, 464 N.E.2d 538 (1984).

{¶ 9} "When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the

rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." (Citations omitted.) *U.S. Sprint Communications Co. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994).

{¶ 10} However, the Supreme Court of Ohio has also said that "the requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St.3d 173, 175, 610 N.E.2d 987 (1993), citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Thus, "[a]bsent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." *Kennecort* at syllabus. In this situation, "a minimum-contacts analysis as set forth in *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and its progeny, is not appropriate in determining the validity of forum selection clauses * * *." *Id.* at 175.

{¶ 11} The contracts in the case before us were entered into by two commercial entities – a law office and a corporation selling online legal services. The original 2012 contract (called a "Subscription Agreement") provides for arbitration of any controversy or claim arising out of the Agreement, with certain exceptions that are not relevant to this case. *See* Complaint, Doc. #1, Ex. A, Section 3.1. Section 3.1 further states that the arbitration will be held in the United States headquarters city of the party that does not

initiate the claim. *Id.*

**{¶ 12}** Since LEXIS initiated the claim, the dispute would have been arbitrated in San Francisco, California, where Feder's headquarters were located. However, a Promotional Bridge Addendum, attached to the Complaint as Ex. B, and dated February 22, 2013, revised the terms of the Agreement. The Addendum still provides for arbitration (this time in Section 4), and again indicates that arbitration will be held in the headquarters city of the party that does not initiate the claim. Ex. B., Section 4.1.

**{¶ 13}** Unlike the original Agreement, the Addendum contains the following forum selection clause:

> Claims and controversies involving the following will not be subject to arbitration and the parties agree to exclusive jurisdiction in federal or state courts located in Montgomery County, Ohio: (a) a violation of any of the proprietary rights of [LEXIS], including claims in equity or law to protect the intellectual property rights of [LEXIS] or its third-party content providers; (b) failure to comply with restrictions on use of the Materials included in the Agreement and this Amendment; or (c) non-payment. [LEXIS] retains at all times the right to obtain an injunction in court to prevent misuse of the Preferred Services and/or other Online Services and Materials contained therein and all other [LEXIS] and [LEXIS] affiliates' products and services.

Ex. B., Section 4.4.

**{¶ 14}** Under this forum selection clause, Feder waived personal jurisdiction for claims that fell within the provisions of Section 4.4, including non-payment. The Complaint against Feder was clearly a claim for non-payment, and the trial court would

have had personal jurisdiction over him. However, Feder attached documents to his motion to quash, and argued, based on the documents, that he had paid LEXIS and had obtained an accord and satisfaction. Feder, therefore, contended that the case did not involve non-payment, but, at most, involved the validity of the accord and satisfaction, which would have been subject to arbitration.

{¶ 15} As was noted, the items attached to Feder's motion included a letter to LEXIS and the front and back sides of a check. The letter, which is dated March 25, 2014, is headed as follows:

> Re:   Account No. 1581ZX
>
> Termination of Agreement and Final Satisfaction

Motion to Quash, Doc. # 22.

{¶ 16} The text of the letter says that:

> The enclosed check #150 shall serve as notice of termination of the agreement between the Law Office of Craig L. Feder and LexisNexis. Acceptance of this check shall constitute full and final satisfaction for account number 1581ZX and the above mentioned agreement. Accepting this check shall serve as a binding agreement that supersedes any previous agreements and constitutes full and final satisfaction of any claims LexisNexis may have against Law Office of Craig L. Feder and Craig L. Feder.

*Id.*

{¶ 17} The check, which is dated March 25, 2014, was made payable to LEXIS in the amount of $223. The check contains the notation; "ACT #1581ZX Full and Final

Satisfaction." *Id.* The back of the check contains a stamp which appears to indicate that it was deposited by "DLW-ReedEslev" on April 6, 2014." *Id.*

{¶ 18} In opposing the motion, LEXIS argued that the forum selection clause was invoked by its claim for payment, and that the trial court could not consider the accord and satisfaction claim in a motion to dismiss; instead, the claim should be properly asserted as a defense in Feder's answer and considered on that basis.

{¶ 19} In its decision, the trial court concluded that it could consider documentary evidence in ruling on the motion to quash. The court stated that the facts posed a "close question," but found that plaintiff had presented no evidence to counter Feder's "credible showing that an accord and satisfaction between these parties negated the very contract on which Plaintiff relies to exercise personal jurisdiction over Defendant." Doc. #28, p. 6. The court, therefore, concluded that LEXIS had not made a preliminary showing that the contract remained viable. In addition, the court concluded that a dispute over the validity of the accord and satisfaction was not encompassed within the limited jurisdiction conferred by the forum selection clause.

{¶ 20} We disagree with both grounds for the trial court's decision. As an initial matter, the complaint that LEXIS filed clearly falls within the forum selection clause, as it is a claim for non-payment.

{¶ 21} "Accord and satisfaction is an affirmative defense to a claim for money damages. If a party against whom a claim for damages is made can prove accord and satisfaction, that party's debt is discharged by operation of law." *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231, 611 N.E.2d 794 (1993). "An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it." *State*

*ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St.3d 31, 33, 661 N.E.2d 1879 (1996). An affirmative defense " 'admits that the plaintiff has a claim (the "confession") but asserts some legal reason why the plaintiff cannot have any recovery on that claim (the "avoidance").' " *Id.*, quoting 1 Klein, Browne & Murtaugh, *Baldwin's Ohio Civil Practice,* Section 33, at T 13.03 (1988).

{¶ 22} Because the issue of accord and satisfaction was intertwined with the alleged non-payment as a defense, it would have been encompassed within the forum selection clause, and the trial court erred in concluding otherwise. Furthermore, the alleged accord and satisfaction appears to have only been partial, and the trial court would still have had personal jurisdiction over the non-payment claims against Feder.

{¶ 23} With respect to accord and satisfaction as a defense, the Supreme Court of Ohio further observed in *Allen* that:

When an accord and satisfaction is pled by the defendant, the court's analysis must be divided into three distinct inquiries. First, the defendant must show that the parties went through a process of offer and acceptance – an accord. Second, the accord must have been carried out – a satisfaction. Third, if there was an accord and satisfaction, it must have been supported by consideration. The first and second inquiries merge when the creditor manifests acceptance of the offer by negotiating a check sent by the debtor with the offer. * * *

Two essential safeguards built into the doctrine of accord and satisfaction protect creditors from overreaching debtors: "[1] there must be a good-faith dispute about the debt and [2] the creditor must have

reasonable notice that the check is intended to be in full satisfaction of the debt." *AFC Interiors, supra*, 46 Ohio St.3d [1] at 12, 544 N.E.2d [869] at 878 (H. Brown, J., dissenting on other grounds).

(Citation omitted.) *Allen,* 66 Ohio St.3d at 231-232, 611 N.E.2d 794.

{¶ 24} Regarding the first safeguard, the court stressed that "[i]f there is not an *actual dispute* between the parties, there cannot be an accord and satisfaction. * * * There are two reasons for this requirement. First, if there is no dispute, the accord would not be supported by consideration because the creditor would not be giving anything up in exchange for the payment from the debtor * * *." (Citation omitted.) (Emphasis sic.) *Id. at* 232.

{¶ 25} Concerning the second safeguard, the court stated that it "requires the creditor to be given reasonable notice that the check sent by the debtor is intended as *full satisfaction* of the alleged debt. (Emphasis sic.) *Id.* " 'The rule relating to an offer of accord is that the offer must make clear that the offeror seeks a total discharge. If this is not done any payment made and accepted will be treated as part payment.' " *Id.* at 232-233, quoting Calamari & Perillo, *Contracts,* Section 4-11, at 215 (3 Ed.1987).

{¶ 26} In the case before us, by finding the defendant's version "credible," the trial court improperly weighed the allegations in favor of Feder. " 'When a court's personal jurisdiction is properly challenged * * *, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.' " (Citation omitted.) *Rita Ann Distrib. v. Brown Drug Co.*, 164 Ohio App.3d 145, 2005-Ohio-5786, 841 N.E.2d 400, ¶ 13 (2d Dist.). However, we noted in *Rita Ann* that:

"If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when * * * the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker* (C.A.4, 1989), 886 F.2d 673, 676.

*Id.*

**{¶ 27}** Because the trial court chose not to hold an evidentiary hearing or to defer a decision pending receipt of evidence at trial, LEXIS was required only to make a prima facie case. In addition, the court should have assumed the credibility of LEXIS's claims and should have construed the allegations in favor of jurisdiction. Instead, the court assumed the credibility of Feder's claims, and did not construe the allegations in favor of jurisdiction.

**{¶ 28}** In this regard, we note the following points. The Agreement provided for minimum monthly charges to use certain of LEXIS's online legal services, which were designated as "Preferred Services." In addition, Feder agreed to pay "all charges for use of materials and features outside of the Preferred Services ("Other Charges") in

accordance with the Price Schedule * * *." Doc. #1, Ex. A., p. 1; Ex. B., p. 4 (Addendum). In the original Agreement, the monthly minimum charge was $75 for a period between April 1, 2012, and March 31, 2013. In the Addendum, the minimum monthly charge was $143 from March 1, 2013, to March 31, 2013, and was $215 from April 1, 2013, through March 31, 2014. Thus, the total amount due for the minimum monthly charges between the time the contract began and when Feder sent his notice of termination on March 25, 2014, would have been approximately $3,480. In view of the disparity between this amount and the amount requested in the complaint ($31,295.53), it appears that the additional amount was due to the use of features and services outside the Preferred Services covered by the minimum monthly charges.

{¶ 29} This is consistent with the fact that the Addendum refers to two participating bill groups for Feder – Billgroup #1581ZX and Billgroup#1582BC. *See* Ex. B, p.3. However, the check tendered by Feder as "full satisfaction," refers only to account #1581ZX. Feder's letter also references only this account. The trial court failed to mention these facts, and it appears that if any "accord and satisfaction" occurred, it would have only been partial. LEXIS, therefore, established a prima facie case of personal jurisdiction, and the allegations in the relevant pleadings, construed in favor of LEXIS, indicate that the trial court had personal jurisdiction over Feder. Accordingly, the trial court erred in sustaining the motion to quash and dismissing the complaint.

{¶ 30} Based on the preceding discussion, LEXIS's sole assignment of error is sustained.

### III. Conclusion

{¶ 31} LEXIS's sole assignment of error having been sustained, the judgment of

the trial court is reversed.   This cause is remanded for further proceedings.


. . . . . . . . . . . . .


FAIN, J. and DONOVAN, J., concur.


Copies mailed to:

Michael W. Sandner
Jessica A. Brockman
Craig Feder
Hon. Mary Lynn Wiseman